**DOLL AMIR & ELEY LLP**
GREGORY L. DOLL (SBN 193205)
gdoll@dollamir.com
HUNTER R. ELEY (SBN 224321)
heley@dollamir.com
CONNIE Y. TCHENG (SBN 228171)
ctcheng@dollamir.com
LLOYD VU (SBN 248717)
lvu@dollamir.com
725 South Figueroa Street, Suite 3275
Los Angeles, California 90017
Tel:  213.542.3380
Fax: 213.542.3381

Attorneys for Defendant,
HP INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIS HICKS, an individual, on behalf of himself, the general public, and those similarly situated,<br><br>   Plaintiff,<br><br>v.<br><br>HP INC.,<br><br>   Defendant. | Case No. 3:19-cv-02050-WHA<br><br>*Assigned to Judge William Alsup*<br><br>**DEFENDANT HP INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO REMAND ACTION TO STATE COURT**<br><br>[*Declarations of Hunter R. Eley, Chris Bostrom, Girish Nair and Wendell Cox filed concurrently herewith*]<br><br>Date:  June 20, 2019<br>Time:  8:00 a.m.<br>Place:  Courtroom 12, 19th Floor<br>     450 Golden Gate Avenue<br>     San Francisco, CA 94102<br><br>Complaint Filed: 10/11/2017<br>Trial Date:  TBA |

**"REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED."**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND .................................... 3

III.  ARGUMENT ..................................................................... 4

    A.   HP's Notice Of Removal Was Not Required To Include Evidence ..... 4

    B.   CAFA Is Applied Broadly To Effect Its Purpose, And Exceptions To CAFA Removal Jurisdiction Are Strictly Construed ...................... 5

    C.   All Three Elements Of CAFA Removal Jurisdiction Are Satisfied ..... 6

        1.   The Amount In Controversy Exceeds $5 Million ..................... 6

        2.   The Putative Class Has More Than 100 Members ................... 6

        3.   Minimal Diversity Exists Among The Parties ......................... 7

    D.   HP's Notice Of Removal Was Timely ................................... 8

        1.   No Deadline Clock Ever Began To Run With Respect To Minimal Diversity ................................................... 8

            a.   No Pleading Or Other Paper That HP Has Received From Plaintiff Has Disclosed Minimal Diversity ........... 8

            b.   Vigil v. Irwin Naturals Was Purportedly Based On Rule 11, Not CAFA, And Involved Evidence Of Bad Faith Absent Here .......................................... 10

            c.   The Date On Which A Case Becomes Removable Is The Relevant Date For Assessing CAFA Minimal Diversity ....................................................... 11

        2.   The March 18 Settlement Letter Was The First "Other Paper" That Sufficiently Disclosed The Amount In Controversy ..................................................... 11

    E.   Plaintiff Has The Burden Of Proving That A CAFA Exception Applies ................................................................... 14

    F.   Plaintiff Has Not Proven That A CAFA Exception Applies .......... 15

        1.   Plaintiff May Not Simply Rely On His Allegations; Evidence Is Required ......................................... 15

        2.   The Gobalet Declaration Contains No Evidence Of The Kind That The Ninth Circuit's Mondragon Opinion Requires ............................................. 16

DOLL AMIR & ELEY LLP

3.     Most Of Plaintiff's Case Authorities Regarding Evidence Of CAFA Exceptions Precede, And Are Inconsistent With, Mondragon ................................................................. 19

4.     Plaintiff's Lone Authority That Postdates Mondragon Fails To Discuss Or Apply That Controlling Authority ................... 20

5.     Other Cases Decided After Mondragon, Which Actually Cite And Apply It, Better Illustrate What Ninth Circuit Law Now Requires ........................................................... 21

G.     Plaintiff Should Not Be Allowed To Amend His Complaint For The Purpose Of Defeating Federal Jurisdiction ................... 22

H.     HP Does Not Object To Appropriate Jurisdictional Discovery .......... 23

I.     There Is No Basis To Award Costs And Fees ................................... 23

IV.     CONCLUSION ............................................................................. 24

TABLE OF CONTENTS

# **TABLE OF AUTHORITIES**

Page

**Cases**

*3123 SMB LLC v. Horn*,
880 F.3d 461 (9th Cir. 2018)............................................................................ 7

*Abrego v. Dow Chem. Co.*,
443 F.3d 676 (9th Cir. 2006)........................................................................ 6, 7

*Allen v. Boeing Co.*,
784 F.3d 625 (9th Cir. 2015)............................................................................ 6

*Allen v. Boeing Co.*,
821 F.3d 1111 (9th Cir. 2016)........................................................................ 14

*Ambriz v. Luxury Imports of Sacramento, Inc.*, No. C 08-1004,
2008 U.S. Dist. LEXIS 91910 (N.D. Cal. May 5, 2008) ........................... 13, 14

*Babasa v. LensCrafters, Inc.*,
498 F.3d 972 (9th Cir. 2007)...................................................................... 13, 14

*Benko v. Quality Loan Serv. Corp.*,
789 F.3d 1111 (9th Cir. 2015)............................................................... 14, 15, 22

*Bridewell-Sledge v. Blue Cross*,
798 F.3d 923 (9th Cir. 2015)............................................................................ 5

*Broadway Grill, Inc. v. Visa Inc.*,
856 F.3d 1274 (9th Cir. 2017)............................................................... 11, 22, 23

*Cohn v. Petsmart, Inc.*,
281 F.3d 837 (9th Cir. 2002)......................................................................... 14

*Coleman v. Estes Express Lines, Inc.*,
631 F.3d 1010 (9th Cir. 2011)....................................................................... 16

*Cortez v. McClatchy Newspapers, Inc.*, No. 2:15-cv-1891,
2016 U.S. Dist. LEXIS 74315 (E.D. Cal. June 6, 2016).......................... 20, 21

*Dart Cherokee Basin Operating Co. v. Owens*,
135 S. Ct. 547 (2014) ................................................................................ 4, 5

*Doyle v. OneWest Bank*,
764 F.3d 1097 (9th Cir. 2014)....................................................................... 22

*Durham v. Lockheed Martin Corp.*,
445 F.3d 1247 (9th Cir. 2006)......................................................................... 9

*Evans v. Walter Indus., Inc.*,
449 F.3d 1159 (11th Cir. 2006)..................................................................... 15

*Gardner v. UICI*,
508 F.3d 559 (9th Cir. 2007)........................................................................ 23

DOLL AMIR & ELEY LLP

*Gaus v. Miles, Inc.*,
  980 F.2d 564 (9th Cir. 1992)................................................................. 5

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
  328 F.3d 1122 (9th Cir. 2003)............................................................ 23

*Harris v. Bankers Life & Cas. Co.*,
  425 F.3d 689 (9th Cir. 2005)................................................... 8, 13, 14

*Haynes v. EMC Mortg. Corp.*, No. C 10-372,
  2010 U.S. Dist. LEXIS 46436 (N.D. Cal. Apr. 12, 2010) ............... 20

*Hoy v. Clinnin*, No. 17-cv-788,
  2017 U.S. Dist. LEXIS 96872, (S.D. Cal. June 22, 2017)................. 24

*Ibarra v. Manheim Investments, Inc.*,
  775 F.3d 1193 (9th Cir. 2014)............................................................. 4

*In re Sprint Nextel Corp.*,
  593 F.3d 669 (7th Cir. 2010).......................................................... 2, 20

*Kanter v. Warner-Lambert Co.*,
  265 F.3d 853 (9th Cir. 2001)............................................................ 15

*King v. Great Am. Chicken Corp.*,
  903 F.3d 875 (9th Cir. 2018)............................................... 15, 18, 23

*Krajca v. Southland Corp.*,
  206 F. Supp. 2d 1079 (D. Nev. 2002) ......................................... 13, 14

*Krueger v. Stively*, No. 1:18-cv-406,
  2019 U.S. Dist. LEXIS 52576, (D. Idaho Mar. 25, 2019) ............... 11

*Kuxhausen v. BMW Financial Servs., N.A.*,
  707 F.3d 1136 (9th Cir. 2013)............................................................. 9

*Lew v. Moss*,
  797 F.2d 747 (9th Cir. 1986).......................................................... 8, 15

*Lott v. Pfizer, Inc.*,
  492 F.3d 789 (7th Cir. 2007)............................................................ 24

*Lussier v. Dollar Tree Stores, Inc.*,
  518 F.3d 1062 (9th Cir. 2008)..................................................... 23, 24

*Martin v. Franklin Capital Corp.*,
  546 U.S. 132 (2005) .......................................................................... 23

*Molina v. Lexmark Int'l, Inc.*, No. CV 08-4796,
  2012 U.S. Dist. LEXIS 83014 (C.D. Cal. Sep. 30, 2008)................. 14

*Mondragon v. Capital One Auto Fin.*,
  736 F.3d 880 (9th Cir. 2013)...................................................... passim

*Pickman v. Am. Express Co.*, No. C 11-5326,
  2012 U.S. Dist. LEXIS 9662 (N.D. Cal. Jan. 27, 2012) .................. 14

DOLL AMIR & ELEY LLP

iv

*Pineda v. Bank of Am., N.A.*, No. C 11-606,
    2011 U.S. Dist. LEXIS 37500, (N.D. Cal. Mar. 28, 2011) .......................... 5

*Quesada v. Herb Thyme Farms, Inc.*, No. CV 11-16,
    2011 U.S. Dist. LEXIS 37697, (C.D. Cal. Mar. 28, 2011) .......................... 19

*Richards v. Now, LLC*, No. 2:18-cv-10152,
    2019 U.S. Dist. LEXIS 77979, (C.D. Cal. May 8, 2019) ................................ 22

*Rodriguez v. Instagram, LLC*, No. C 12-6482,
    2013 U.S. Dist. LEXIS 98627, (N.D. Cal. July 12, 2013) ........................ 19, 20

*Romo v. Panda Rest. Grp., Inc.*, No. CV 12-996,
    2012 U.S. Dist. LEXIS 128689, (C.D. Cal. Sep. 7, 2012) .............................. 19

*Rotenberg v. Brain Research Labs LLC*, No. C-09-2914,
    2009 U.S. Dist. LEXIS 91335, (N.D. Cal. Sep. 15, 2009) .............................. 19

*Roth v. CHA Hollywood Med. Ctr., L.P.*,
    720 F.3d 1121 (9th Cir. 2013) ............................................ 1, 9, 10, 13

*Serrano v. 180 Connect, Inc.*,
    478 F.3d 1018 (9th Cir. 2007) ...................................................... 7

*Serrano v. Bay Bread LLC*, No. 14-cv-1087,
    2014 U.S. Dist. LEXIS 127939, (N.D. Cal. Sep. 14, 2014) ....................... 21, 22

*Tuttle v. Sky Bell Asset Mgmt. LLC*, No. C 10-3588,
    2011 U.S. Dist. LEXIS 7466, (N.D. Cal. Jan. 21, 2011) ................................ 23

*Valdez v. Allstate Ins. Co.*,
    372 F.3d 1115 (9th Cir. 2004) ..................................................... 16

*Van Fleet v. Trion Worlds, Inc.*, No. C 15-4721,
    2016 U.S. Dist. LEXIS 3794, (N.D. Cal. Jan. 12, 2016) ................................ 24

*Vigil v. Irwin Naturals*,
    2016 U.S. Dist. LEXIS 159602, (C.D. Cal. Nov. 17, 2016) ........................... 10

*Vitale v. D.R. Horton, Inc.*, CV No. 15-312,
    2016 U.S. Dist. LEXIS 105151, (D. Haw. Aug. 9, 2016) ......................... 21, 22

**Statutes**

28 U.S.C. §1332 .......................................................................... 4

28 U.S.C. § 1332(c)(1) ................................................................... 7

28 U.S.C. § 1332(d)(1)(D)(2)(A) ........................................................ 7

28 U.S.C. § 1332(d)(1)(D)(2)(B) ........................................................ 7

28 U.S.C. § 1332(d)(2), (d)(5)(B) ...................................................... 6

28 U.S.C. §1441 .......................................................................... 4

TABLE OF AUTHORITIES

28 U.S.C. §1446................................................................................................ 4

28 U.S.C. §1446(a) ........................................................................................... 4

28 U.S.C. §1446(b) ........................................................................................... 9

28 U.S.C. §1446(b)(1) ....................................................................................... 8

28 U.S.C. §1446(b)(3) .............................................................................. 8, 9, 14

28 U.S.C. §1453................................................................................................ 4

**Rules**

Fed. R. Civ. P. 8.............................................................................................. 4

Fed. R. Civ. P. 11.......................................................................................... 10

**Other Authorities**

Class Action Fairness Act of 2005 ......................................................... passim

DOLL AMIR & ELEY LLP

## I. **INTRODUCTION**

Defendant HP Inc. ("HP") removed this action to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"). There is little doubt that the three basic elements of federal jurisdiction under CAFA are satisfied. First, Plaintiff Louis Hicks ("Plaintiff") has always alleged (and concedes in the memorandum supporting his motion to remand) that the putative class has more than 100 members. Second, Plaintiff also acknowledges that the amount in controversy in this case exceeds $5 million; in fact, he argues that this fact has been obvious since at least last year. Third and finally, this memorandum is accompanied by declarations that establish the "minimal diversity" required by CAFA; at least one member of the putative class is a citizen of a foreign country and at least one member of the putative class is a citizen of a state other than California and Delaware (the two states of which HP, the sole defendant, is a citizen).

Plaintiff's entire motion is based on outdated, overruled case law and should be denied. First, although Plaintiff argues that HP's notice of removal is untimely, he disregards Ninth Circuit authority clearly establishing that Defendants had *no* deadline or "clock" to remove. Here, HP developed all of its information regarding minimal diversity on its own. No "pleading, amended pleading, motion, order, or other paper" that HP ever received from Plaintiff in this litigation disclosed that any member of the putative class was a citizen of a state other than California or Delaware. Similarly, no such paper disclosed that any member of the putative class was a citizen of a foreign country. HP learned entirely through its own efforts that certain members of the putative class are citizens of Pennsylvania and India. Under the clear and controlling Ninth Circuit case of *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121 (9th Cir. 2013), this means that HP was free to remove this case *at any time*. *Id.* at 1125. No 30-day deadline clock ever began to run, and HP's notice of removal was timely.

Second, Plaintiff relies on a series of cases decided before the Ninth Circuit's *Mondragon v. Capital One Auto Finance* decision in 2013 in support of his argument that this case should be remanded pursuant to the "local controversy" and/or the "home state" exception to CAFA. Plaintiff argues that HP did not meet its burden to remove, but it is *Plaintiff*, not HP, who bears the burden to remand by showing that it meets one of the CAFA exceptions. The key question is whether Plaintiff has proven that at least two-thirds of the members of the putative class were, on the day of removal, citizens of California. Importantly, the Ninth Circuit has emphasized that evidence of class members' citizenships is required. "'Sensible guesswork, based on a sense of how the world works," is no substitute for evidence regarding the citizenships of the actual people who are members of the putative class. *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 884 (9th Cir. 2013) (quoting *In re Sprint Nextel Corp.*, 593 F.3d 669, 674 (7th Cir. 2010)). Plaintiff has put forward no evidence that would satisfy this burden.

The declaration of a demographic expert submitted by Plaintiff is the sort of "guesswork" that *Mondragon* rejects. It is based only on a single number that purportedly represents the average percentage of people who change residence from California to other states each year. That number involves changes of residence, not domicile. Plaintiff's declaration entirely ignores that many residents of California are citizens of other countries. It ignores that many residents of California are students, temporary workers, and military personnel who have permanent domiciles elsewhere. The declaration fails to compare the putative class to California's overall population in any way. It takes no account of differences of mobility between students and other adults, or among professions and income levels. It fails to address the possibility that HP laptop purchasers as a group may be more mobile than the population as a whole. The concurrently filed declaration of Wendell Cox underscores the shortcomings of the limited data sample upon which Plaintiff relies. Plaintiff proffers no evidence from which this Court could even draw inferences regarding the magnitude and

DOLL AMIR & ELEY LLP

impact of these variables. As such, the declaration is (at best) the sort of "sensible guesswork" that *Mondragon* rejects. As in *Mondragon*, this motion should be denied unless and until Plaintiff is actually able to produce evidence that more than two-thirds of putative class members were citizens of California on the day this case was removed.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed this lawsuit in Santa Clara Superior Court on October 11, 2017. [Dkt.# 1-2 (Complaint).] This case arises out of USB 3.1 Gen 1 port specifications for HP notebooks. Plaintiff allegedly researched the USB specifications for an HP Envy 360 notebook on HP's website and then purchased that model laptop in person at a Best Buy in Anaheim, California.  Plaintiff contends the following description of the USB 3.1 Gen 1 port in his model laptop is a misrepresentation:  "Data Transfer up to 5Gb/s."  Plaintiff seeks to represent a class defined as: "All persons, natural or otherwise, who, while residing in California, purchased a Purported USB 3.1 Laptop." [*Id.*, ¶ 51.] The complaint alleges that the putative class has at least 1,000 members. [Id., ¶ 53.] The class period is not specifically defined, but Plaintiff alleges that the laptops at issue failed to comply with a specification that was released on July 26, 2013 and that the wrongs alleged occurred within four years preceding the filing of the complaint. [*Id.*, ¶¶ 16, 106.]

On March 18, 2019, Plaintiff's counsel sent an email containing a settlement demand to HP's counsel. [Dkt.# 15-1 (Declaration of Seth Safier in Support of Motion to Remand) ("Safier Decl.")] As set forth in more detail in Sections III.C.1 and III.D.2 *infra*, that demand was the first paper provided to HP by Plaintiff in this litigation that provided notice that the amount in controversy in this case exceeds $5 million.

After HP received the March 18 settlement demand, its counsel proceeded to investigate whether any member of the putative class in this case might be a citizen of a foreign country, or a citizen of a U.S. state other than California or Delaware.

[Declaration of Hunter R. Eley ("Eley Decl."), ¶¶ 4-5, Ex. C.] Between April 10, 2019 and April 13, 2019, counsel discovered evidence that at least one member of the putative class is a citizen of a foreign country (India) and that at least one member of the putative class is a citizen of the Commonwealth of Pennsylvania. [*Id.*; Declaration of Girish Nair ("Nair Decl."), ¶¶ 3-4, Exs. A and B.]

On April 16, 2019, HP removed this lawsuit to federal court pursuant to CAFA, 28 U.S.C. sections 1332, 1441, 1446, and 1453. [Dkt.# 1 (Notice of Removal).]

## III. <u>ARGUMENT</u>

### A. <u>HP's Notice Of Removal Was Not Required To Include Evidence</u>

Plaintiff complains that HP's notice of removal was unaccompanied by evidence. [Dkt.# 15, Plaintiff's Motion to Remand Action to State Court; Memorandum of Points and Authorities in Support Thereof (henceforth "Motion") at 1:14-17; 5:3-4.] Notices of removal need not include evidence. A notice of removal to federal court is in the nature of a pleading. 28 U.S.C. section 1446(a) requires only a "short and plain" statement of the alleged facts that justify removal; the language mirrors Rule 8 of the Federal Rules of Civil Procedure.

The Supreme Court removed all doubt in this area in *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547 (2014). "A [CAFA] defendant's notice of removal need include only a plausible allegation that [an element of federal jurisdiction under CAFA is satisfied]. Evidence establishing [the element] is required . . . only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* at 554. If and when one of those things happens, both sides have an opportunity to submit proof. *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2014) (quoting *Dart Cherokee*, 135 S. Ct. at 554.). HP's evidence accompanies this opposition brief.

## B.   CAFA Is Applied Broadly To Effect Its Purpose, And Exceptions To CAFA Removal Jurisdiction Are Strictly Construed

Citing only a single case that predates CAFA's enactment, Plaintiff argues that all removal statutes are strictly construed against removal jurisdiction. [Motion at 4:20-22 (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).] This is not true of CAFA. The Supreme Court has noted that Congress intended CAFA to be read broadly, in order to effect its purpose of ensuring a federal forum for class actions that meet its three jurisdictional criteria. There is no presumption against removals pursuant to CAFA; it is exceptions to CAFA removal jurisdiction that are strictly construed.

The Supreme Court held in *Dart Cherokee* that there is no presumption against CAFA removal jurisdiction. 135 S. Ct. at 554. This contrasts with the lone, pre-CAFA case on which Plaintiff relies. *Compare Dart Cherokee*, 135 S. Ct. at 554 (no presumption against CAFA removal jurisdiction) *with Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (strong presumption against general removal jurisdiction). It also contrasts with many courts' application of a presumption against CAFA removal in the years before *Dart Cherokee* was decided. *See, e.g., Pineda v. Bank of Am., N.A.*, No. C 11-606, 2011 U.S. Dist. LEXIS 37500, *6 (N.D. Cal. Mar. 28, 2011) (citing *Gaus* and applying strong presumption against removal jurisdiction in CAFA case). The Supreme Court also emphasized in *Dart Cherokee* that Congress intended to facilitate the adjudication in federal court of class actions meeting its three jurisdictional criteria, and it quoted legislative history specifying that CAFA's provisions should be read broadly. 135 S. Ct. at 554.

In cases decided subsequent to *Dart Cherokee*, the Ninth Circuit has emphasized that "'CAFA should be read with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" *Bridewell-Sledge v. Blue Cross*, 798 F.3d 923, 929 (9th Cir. 2015) (quoting cases and disapproving of district court order applying presumption against removal). When a

case is removed to federal court pursuant to CAFA, it is *exceptions* to federal jurisdiction under CAFA that are to be strictly construed. *Allen v. Boeing Co.*, 784 F.3d 625, 633 (9th Cir. 2015).

### C. All Three Elements Of CAFA Removal Jurisdiction Are Satisfied

CAFA creates federal jurisdiction over a putative class action when: (1) the amount in controversy exceeds $5 million, (2) the aggregate number of putative class members is 100 or greater, and (3) there is minimal diversity among the parties, including members of the putative class. 28 U.S.C. § 1332(d)(2), (d)(5)(B). These criteria are satisfied in this case.

#### 1. The Amount In Controversy Exceeds $5 Million

The amount in controversy in this case exceeds $5 million. In a written communication delivered on March 18, 2019, Plaintiff's counsel demanded a settlement benefit of ██████████████████████ for each member of the putative class. [Safier Decl., p. 27, ¶ 6.6.] HP's sales data indicate that the number of laptops containing USB 3.1 Gen 1 ports sold in California during the alleged class period was approximately 1,250,000. [Bostrom Decl., ¶ 3, Ex. A.] These numbers support an amount in controversy of over $5 million ████████████ ███████████████████████ even based on the lower, cash version of the settlement benefit. It is thus "more likely than not" that the amount in controversy in fact exceeds $5 million. *See Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006).

Plaintiffs do not dispute that the amount in controversy exceeds $5 million. [*See* Motion at 10-11 (arguing instead that it has been obvious for some time that this CAFA removal criterion is satisfied).]

#### 2. The Putative Class Has More Than 100 Members

The complaint in this case expressly alleges that the putative class has more than 100 members: "The precise number of members in the Class is not yet known to Plaintiff, but he estimates that it is well in excess of 1,000 members." [Complaint, ¶

1   53.] Plaintiffs do not dispute that this CAFA removal criterion is satisfied. [*See*

2   Motion at 4 n.3.]

### 3. Minimal Diversity Exists Among The Parties

4       The minimal diversity required by CAFA also exists in this case. The minimal

5   diversity requirement is satisfied if at least one putative class member is a citizen of a

6   state different from any defendant. 28 U.S.C. § 1332(d)(1)(D)(2)(A); *Serrano v. 180*

7   *Connect, Inc.*, 478 F.3d 1018, 1020-21 (9th Cir. 2007). It is also satisfied if a

8   defendant is a citizen of a state and at least one putative class member is a citizen of a

9   foreign country. 28 U.S.C. § 1332(d)(1)(D)(2)(B); *Abrego*, 443 F.3d at 680 n.5. As

10  Plaintiff alleges, HP is a Delaware corporation with its principal place of business in

11  California. [Complaint, ¶ 5.] HP is thus a citizen of both of those states. 28 U.S.C. §

12  1332(c)(1); *3123 SMB LLC v. Horn*, 880 F.3d 461, 462-63 (9th Cir. 2018).

13  Accordingly, minimal diversity exists for CAFA removal purposes if at least one

14  putative class member is a citizen of a state other than California or Delaware, or if at

15  least one putative class member is a citizen of a foreign country.

16      There is evidence that at least one member of the putative class is a citizen of

17  Pennsylvania and that at least one member of the putative class is a citizen of India.

18  HP's internal records indicate that ███████████ purchased a laptop

19  containing at least one USB 3.1 Gen 1 port in approximately December 2016.  [Eley

20  Decl., ¶ 5, Ex. C.]  ███████ resided in California at the time of the purchase.

21  [*Id.*]  However, he is now permanently domiciled in and a citizen of Pennsylvania.

22  [*Id.*]  Additionally, HP's internal records indicate that ████████ purchased a

23  laptop containing at least one USB 3.1 Gen 1 port in approximately November 2017.

24  [Nair Decl., ¶ 3, Ex. A.]  The shipping address for Mr. ███████ purchase indicated

25  a California residence.  [*Id.*]  HP's internal records indicate that Mr. ████████ is a

26  citizen of India.  [*Id.*, ¶ 4, Ex. B.]

27

28

DOLL AMIR & ELEY LLP

**D.** **HP's Notice Of Removal Was Timely**

When a party receives an initial pleading that alleges facts sufficient to satisfy all three elements of CAFA federal jurisdiction, that party has 30 days in which to remove. 28 U.S.C. § 1446(b)(1). Where the initial pleadings are uncertain, and where a party later receives one or more "amended pleadings, motions, orders, or other papers" from the plaintiff showing that all three CAFA elements are satisfied, that receipt triggers another 30-day deadline to remove. 28 U.S.C. § 1446(b)(3). Importantly, though, in order to trigger that second 30-day deadline clock, the facts supporting all three CAFA criteria must be evident on the face of one or more initial pleadings, amended pleadings, motions, orders, or other papers that the defendant has received from the plaintiff. Neither the defendant's subjective knowledge nor any duty to make further inquiry ever triggers an obligation to remove by a particular date. *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005).

**1.** **No Deadline Clock Ever Began To Run With Respect To Minimal Diversity**

**a.** **No Pleading Or Other Paper That HP Has Received From Plaintiff Has Disclosed Minimal Diversity**

To this day, no paper that HP has received from Plaintiff in this litigation has alleged or cited facts tending to show that any member of the putative class is or was a citizen of a state other than California or Delaware, or of a foreign country.

The initial complaint in this case alleges no facts regarding the existence of minimal diversity. It alleges facts that would yield the legal conclusion that HP is a citizen of both California and Delaware. It then goes on to allege that the putative class constitutes "all persons who, while residing in California, purchased a Purported USB 3.1 Laptop." It alleges nothing about class members' citizenships; citizenship and residence are not the same thing. *See Lew v. Moss*, 797 F.2d 747, 749-50 (9th Cir. 1986) (discussing definition of citizenship/domicile and relevant factors). The complaint left open the possibility that some members of the putative class were

8

citizens of states other than California or Delaware, or citizens of foreign countries. Nevertheless, it did not allege that any member of the putative class *was* a citizen of any other state or country.

Nor does any other paper that HP has received from the plaintiffs establish the minimal diversity element of CAFA removal. Plaintiff's memorandum acknowledges that no paper it has provided to HP has included allegations or evidence supporting minimal diversity:

> . . . [HP] does not even attempt to tie [its] discovery [of facts supporting minimal diversity] to some "other paper" that would have restarted the 30-day clock. No change has been made to the class definition. Thus, HP has no basis to claim that there is new information about citizenship that provides a basis to remove.

[Motion at 11:21-24.]

Plaintiff is correct about the factual history; no "other paper" that HP has received from Plaintiff in this case contains any information at all about minimal diversity. But Plaintiff is incorrect about the legal effect of that factual history. It means that the 30-day deadline set forth in 28 U.S.C. section 1446(b)(3) has never been triggered. "[W]e 'don't charge defendants with notice of removability until they've received a paper that gives them enough information to remove.'" *Kuxhausen v. BMW Financial Servs., N.A.*, 707 F.3d 1136, 1141 (9th Cir. 2013) (quoting *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006)).

Here, evidence supporting minimal diversity came to light when HP did its own investigation, and identified at least two putative class members who are citizens of neither California nor Delaware. [Eley Decl., ¶¶ 3-4, Ex. C; Nair Decl., ¶¶ 3-4, Exs. A-B.]

A single Ninth Circuit case is squarely on point, and is dispositive of Plaintiff's entire timeliness argument. In *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121 (9th Cir. 2013), the court held that the 30-day deadlines reflected in 28 U.S.C. sections 1446(b) apply only where all of the information necessary to support CAFA removal appears in pleadings or other papers that a defendant receives from a

plaintiff. Where a class action defendant discovers facts supporting CAFA removability through its own investigative efforts, that defendant may remove *at any time*. *Id*. at 1125.

### b. Vigil v. Irwin Naturals Was Purportedly Based On Rule 11, Not CAFA, And Involved Evidence Of Bad Faith Absent Here

Plaintiff argues that *Vigil v. Irwin Naturals*, No. LA CA16-4103, 2016 U.S. Dist. LEXIS 159602 (C.D. Cal. Nov. 17, 2016), is "instructive," and supports remand. [Motion at 11:25-12:3.] *Vigil* does not support remand, and is instructive only as a counterexample. *Vigil* is a peculiar case that was decided pursuant to Rule 11 of the Federal Rules of Civil Procedure, rather than CAFA or any CAFA-related case law. The defendant in *Vigil* alleged in its notice of removal that it had lacked information regarding the non-California, non-Nevada citizenship of any members of the putative class until less than 30 days prior to the date of removal. *See id*. at *4. The district court examined portions of the state court record and concluded that this allegation was factually false and had not been made in good faith. Specifically, there was actual evidence in the state court record that the defendant had known relevant facts regarding the parties' citizenship for quite some time. As such, without any discussion of *Roth* or other Ninth Circuit cases holding that a defendant who discovers removability through its own efforts may remove at any time, the *Vigil* court decided that "pursuant to Rule 11" it was "not appropriate to exercise CAFA jurisdiction . . . ." *Id*. at *18-19. Whether or not *Vigil* was correctly decided, and whatever powers this Court may have under Rule 11, this case is readily distinguishable from *Vigil*. Nothing in the record in this case, including the state court record, contradicts any of the allegations in HP's notice of removal. There is no reason for this Court to decide this motion on the basis of Rule 11, rather than on the basis of CAFA and related case law.

### c. The Date On Which A Case Becomes Removable Is The Relevant Date For Assessing CAFA Minimal Diversity

In a footnote at the end of his timeliness argument, Plaintiff argues that minimal diversity should be assessed as of the date of his original complaint: "HP is not permitted to argue that some putative class members moved during the litigation." [Motion at 12 n.6.]. This is incorrect. Express statutory language provides that the relevant date for assessing CAFA minimal diversity is the date on which a case becomes removable. 28 U.S.C. § (d)(7) ("Citizenship of the members of the proposed plaintiff classes shall be determined . . . as of the date of filing of the complaint or amended complaint, or, if the case stated by the initial pleading is not subject to Federal jurisdiction, as of the date of service by plaintiffs of an amended pleading, motion, or other paper, indicating the existence of Federal jurisdiction."). *See also Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1279 (9th Cir. 2017); *Mondragon*, 736 F.3d at 883; *Krueger v. Stively*, No. 1:18-cv-406, 2019 U.S. Dist. LEXIS 52576, *6-7 (D. Idaho Mar. 25, 2019).

In any event, the evidence indicates that ███████████ has been a citizen of India all along. [Nair Decl., ¶ 4, Ex. B.] Accordingly, minimal diversity has existed since before Plaintiff filed his original complaint.

### 2. The March 18 Settlement Letter Was The First "Other Paper" That Sufficiently Disclosed The Amount In Controversy

HP's discovery of minimal diversity through its own efforts is dispositive of the timeliness issue. Nevertheless, HP also learned essential facts supporting CAFA's amount in controversy element fewer than 30 days before it filed its notice of removal. This would be another reason for this Court to hold that HP's notice of removal was timely.

The first "paper" that Plaintiff served in this case indicating an amount in controversy in excess of $5 million was the March 18, 2019 e-mail from Seth Safier attaching a class settlement proposal. [Safier Decl., Ex. C.] Specifically, that proposal

11

contemplated an "Enhanced Settlement Benefit" for each "Settlement Class Member" of ███████████████████████████████████████████████████████████████████

███████ [*Id.*] Although the class settlement proposal did not set forth an aggregate amount, HP (through its undersigned counsel) followed up on the March 18 email by reviewing its internal records to arrive at an estimated amount. [Eley Decl., ¶ 4.] HP could not calculate precisely the amount by prospective class member because the class is so broadly defined. For example, HP is not able to identify consumers who purchased laptops with USB 3.1 Gen 1 ports from retail partners, such as Best Buy. [Bostrum Decl., ¶ 4.] Instead, HP analyzed sales data from the alleged class period, which indicated that more than 6,254,000 products containing at least one USB 3.1 Gen 1 port had been sold in the United States. [*Id.*] HP estimated that 20% of total sales would be attributed to California. [*Id.*] HP multiplied that number (1,250,000) by the $████ "Enhanced Settlement Benefit" to arrive at a total amount in controversy in excess of $5 million. [*Id.*]

In an effort to avoid federal jurisdiction on the basis that removal was untimely, Plaintiff attempts to equate the March 2019 settlement proposal (Safier Decl., Ex. C) with a different settlement proposal communicated in May 2018 (Safier Decl., Ex. D). [Motion at 10-11.] Indeed, Plaintiff dubiously claims the amounts are "identical." [Motion at 10:18-22.] However, Plaintiff ignores the express limitation in the draft agreement setting forth the May 2018 proposal. Specifically, the May 2018 settlement letter proposed a "Refund to Affected Customers." The refund was contingent upon HP reviewing its customer service database for records of complaints from consumers regarding the labeling of HP products as "USB 3.1" or "USB 3.1 SuperSpeed." Accordingly, Plaintiff's argument fails for three reasons. First, the May 2018 settlement proposal did not constitute notice that CAFA's amount in controversy requirement was met because it did not say how many people would be eligible for payment. In order for an "other paper" to trigger a 30-day removal deadline, the facts warranting removal must appear within the four corners of the paper; HP was not

DOLL AMIR & ELEY LLP

required to research its records to determine the number of consumers who had complained about the challenged labeling. *See Harris*, 425 F.3d at 694 (setting forth "four corners" rule, rejecting notion of duty to make further inquiry). Second, if HP *had* performed its own research in 2018 in order to develop an estimate of the total amount in controversy, *Roth* would govern and no 30-day deadline clock would have begun to run. *See Roth*, 720 F.3d at 1125. Third, the evidence in this case is clear that no such complaints were received. [Eley Decl., Ex. A (Nair Depo., pp. 134:3-136:20.).] Accordingly, even if HP had been required to research the number of consumer complaints (which it was not), the aggregate amount sought by Plaintiff individually and as a refund to other consumers pursuant to the May 2018 settlement proposal would have been less than $5 million. Contrary to Plaintiff's assertion, the May 2018 settlement proposal would not "have required payments to other putative class members. . . ." [Motion at 10:22-26.]

Plaintiff's reference to an October 2017 CLRA notice letter (Safier Decl., Ex. A) is equally unavailing. At most, the CLRA notice letter claims generically that Defendant may be liable for actual damages, punitive damages, costs and attorney's fees and a $5,000 penalty for each incident where senior citizens have suffered substantial physical, emotional or economic damage. Just as Plaintiff's complaint is devoid of any allegations that would shed light on the number of purported violations, so too does the CLRA notice letter lack any objective facts from which a simple calculation could be made to ascertain the amount in controversy.

None of the cases cited in the first full paragraph on page 11 of Plaintiff's memorandum should lead this Court to conclude that any paper Plaintiff provided to HP in this litigation before March 2019 constituted notice that the amount in controversy exceeded $5 million. *Babasa v. LensCrafters, Inc.*, 498 F.3d 972 (9th Cir. 2007), *Ambriz v. Luxury Imports of Sacramento, Inc.*, No. C 08-1004, 2008 U.S. Dist. LEXIS 91910 (N.D. Cal. May 5, 2008), and *Krajca v. Southland Corp.*, 206 F. Supp. 2d 1079 (D. Nev. 2002), stand only for the very general proposition that a settlement

13

demand letter can, *depending on its content*, be an "other paper" within the meaning of 28 U.S.C. section 1446(b)(3). *Babasa*, 498 F.3d at 975 (quoting *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002)); *Ambriz*, 2008 U.S. Dist. LEXIS 91910 at *2; *Krajca*, 206 F. Supp. 2d at 1081-82. This is true, but no settlement-related communication in this case prior to March 2019 included the necessary content. The other two cases that Plaintiff cites on page 11 of his memorandum, *Pickman v. Am. Express Co.*, No. C 11-5326, 2012 U.S. Dist. LEXIS 9662 (N.D. Cal. Jan. 27, 2012) and *Molina v. Lexmark Int'l, Inc.*, No. CV 08-4796, 2012 U.S. Dist. LEXIS 83014 (C.D. Cal. Sep. 30, 2008), hold only that a defendant may be required to perform simple arithmetic, adding or multiplying figures contained in settlement demands in order to determine the total amount in controversy. *Pickman*, 2012 U.S. Dist. LEXIS 9662 at *5 (per-claim amount of $1,000 multiplied by stated number of claims (5,001) yielded amount in controversy sufficient for CAFA jurisdiction); *Molina*, 2008 U.S. Dist. LEXIS 83014, *70 (specific figures contained in settlement demand, together with amended complaint that added claims and expanded class period, constituted notice that CAFA's amount in controversy requirement was met). Nothing in any of these cases purports to impose on defendants a duty to dig through their own business records or perform other factual research in order to estimate the amount in controversy – a duty that the Ninth Circuit specifically rejected in *Harris*.

E. **Plaintiff Has The Burden Of Proving That A CAFA Exception Applies**

At page 7 of his memorandum, Plaintiff asserts without authority: ". . . HP must establish that more than a third of the putative class, though California residents at the time of the purchase, were domiciled elsewhere." This is false. The burden of proving the applicability of a CAFA exception is squarely on Plaintiff. "The local controversy exception to CAFA jurisdiction is a narrow exception, and [p]laintiffs bear the burden of showing its application." *Allen v. Boeing Co.*, 821 F.3d 1111, 1116 (9th Cir. 2016) (citing *Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1116 (9th

Cir. 2015)). Where remand is sought on the basis of an exception, *it is the exception that is narrowly construed.* Narrow construction and cautious application of the local controversy exception are consistent with Congress's overall purpose of favoring federal jurisdiction over class actions. *Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1116 (9th Cir. 2015) (quoting *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006).

### F. Plaintiff Has Not Proven That A CAFA Exception Applies

#### 1. Plaintiff May Not Simply Rely On His Allegations; Evidence Is Required

In the last paragraph on page 6 of his memorandum, Plaintiff points to his complaint, in which he alleges that each member of the putative class purchased HP laptops while "residing in California." Plaintiff argues that this allegation alone satisfies his obligation to produce evidence that at least two-thirds of the putative class members are California citizens. [Motion at 6:19-28.] More specifically, he argues that he is entitled to rely on the presumption of continuing domicile. This is incorrect. First, according to the very authority that Plaintiff cites, the presumption of continuing domicile only comes into play once a person's state of domicile has been established. *See Mondragon*, 736 F.3d at 885 (describing presumption as applying to a person's state of domicile "once established"). Residence and domicile are not the same thing; many residents of California are not domiciled here. *See King v. Great Am. Chicken Corp.*, 903 F.3d 875, 879 (9th Cir. 2018) ("A person's state of citizenship is established by domicile, not simply residence, and a residential address in California does not guarantee that the person's legal domicile was in California.") (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)); *see also Lew*; 797 F.2d at 749-50. Plaintiff does not establish the current citizenship/domicile of any person merely by pointing to his own unverified allegation that on some date in the past (the date on which the person purchased an HP laptop), the person resided in California.

Second, and more fundamentally, remand can never be based solely on a plaintiff's allegations, when they are challenged by the defendant. A plaintiff must come forward with actual evidence. *Mondragon*, 736 F.3d at 883-84 (citing *Coleman v. Estes Express Lines, Inc.*, 631 F.3d 1010, 1015 (9th Cir. 2011)). This Court must make factual findings under a preponderance of the evidence standard. *Mondragon*, 736 F.3d at 884 (citing *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004)). "A complete lack of evidence does not satisfy this standard." *Id.*

### 2. The Gobalet Declaration Contains No Evidence Of The Kind That The Ninth Circuit's *Mondragon* Opinion Requires

Plaintiff's motion was accompanied by the declaration of a purported expert in demographics, Dr. Jeanne Gobalet. This Court should conclude that the Gobalet declaration fails to prove a CAFA exception under Ninth Circuit law. The Gobalet declaration is not based on *any* facts concerning the members of the putative class, individually or collectively. Instead, it is based solely on a broad and general ongoing statistical survey by the U.S. Census Bureau known as the American Community Survey ("ACS"). [Dkt.# 15-2, Declaration of Dr. Jeanne Gobalet ("Gobalet Decl."), ¶¶ 8-10; Declaration of Wendell Cox ("Cox Decl."), ¶¶ 7-8, Ex. B.] The ACS includes information on interstate migration patterns. [Gobalet Decl., ¶ 10.] Dr. Gobalet used that information to reach a broad, general conclusion about the percentage of people who continue living in California from each year to the next (more than 98 percent) and another broad, general conclusion about the percentage of people who were residents of California in 2013 who still live here now (at least 88%).[1] [*Id.*, ¶ 11.] Based on these conclusions, Dr. Gobalet opines that it is "extremely unlikely" that at least a third of the putative class members "no longer reside within California." [*Id.*, ¶ 12.] However, the ACS data is limited in many

---

[1] Dr. Gobalet does not discuss, much less express a conclusion regarding whether laptop purchasers may as a group be more likely to be students and/or otherwise highly mobile in terms of domicile.

DOLL AMIR & ELEY LLP

material ways and cannot form the basis of any conclusion about the citizenship of prospective class members in this case. [Cox Decl., ¶¶ 9-14, Exs. B-D.]

*Mondragon, supra*, presented the question of whether it was permissible for a district court to conclude that two-thirds of the members of a putative class were citizens of California, based on a class definition that said they had purchased cars in California, for personal use and to be registered in California, during the four-year period before the complaint was filed. 736 F.3d at 882-83. Concluding that the two-thirds requirement would certainly be met in light of the class definition, the district court had ordered remand. *Id.* at 883. The Ninth Circuit reversed, holding that in order for a court applying CAFA's exceptions to make findings regarding class members' citizenships, there must be *facts* in evidence regarding those citizenships. 736 F.3d at 884. It is insufficient that it may seem very likely that two-thirds of putative class members will be California citizens; that proposition must be proven. *Id.* In particular, a plaintiff representing a putative class of persons who made purchases in California must prove that fewer than one-third of the class members, among other possibilities: (1) were members of the military domiciled elsewhere when they made their purchases; (2) were students domiciled elsewhere when they made their purchases; (3) had residences both in and out of state when they made their purchases and were domiciled out of state; (4) were otherwise living in the state temporarily when they made their purchases; or (5) were citizens of other countries when they made their purchases. *Id.* Such a plaintiff must also provide evidence that quantifies the number of putative class members who were California citizens at the time of their purchases, but moved out of state between that time and the time when the lawsuit became removable. *Id.* The Ninth Circuit held that no matter how tempting it might be to base remand rulings on statistical likelihoods and "how the world works," such an approach amounted to "guesswork" rather than evidence and was impermissible. *Id.*

Although Plaintiff in this case presents his statistical likelihood argument in the form of an expert declaration, that declaration remains what the *Mondragon* court

DOLL AMIR & ELEY LLP

called "guesswork." The declaration is not based on any actual facts about the citizenships of the individuals in the putative class. [Cox Decl., ¶¶ 9-10, Ex. B.] The opinion of a non-percipient expert, not based on any underlying evidence, does not itself become evidence. Moreover and more specifically, a plaintiff's evidentiary showing in support of a CAFA motion to remand must quantify the number of putative class members in various categories who are not California citizens, in order to demonstrate that they do not add up to more than one-third. *See, e.g., King*, 903 F.3d at 879-81 (vacating order of remand under CAFA because plaintiff had failed to prove such issues as how many class members had been out-of-state students domiciled elsewhere, and how many class members were not United States citizens). Dr. Gobalet's declaration does not even purport to consider such factors, and it certainly does not quantify them. [Cox Decl., ¶¶ 10-14, Exs. C-D.] It looks only at global rates of interstate migration. [*Id.*, ¶¶ 11-14.] This simplistic and incomplete presentation fails to meet the standard set by *Mondragon*, *King*, and other Ninth Circuit cases.

Moreover, Dr. Gobalet's declaration should be disregarded as irrelevant to the issue to be decided and unsupported by limitations in the source of the data. Although Dr. Gobalet accurately represents what the ACS data she reviewed indicates, her analysis does not address the question of whether persons who were residents of California when they purchased HP laptops since 2013 are now citizens of California. [*Id.*, ¶ 9.] Even so, her limited opinion is based on ACS data that provides no support for the underlying assumption that the subpopulation of persons who buy HP computers demonstrates similar migratory behavior as the greater population of California. [*Id.*] As established in Wendell Cox's declaration, the ACS data is limited in numerous ways, including that it does not provide information on permanent domicile; does not provide information on changes of residence from California to outside the nation; and does not provide information on differential migration rates by age or occupation. [*Id.*, ¶ 10.] For these reasons, the information

analyzed by Dr. Gobalet is insufficient to form the basis of her conclusion that it is "extremely unlikely that at least one third of those who purchased Hewlett Packard laptops while California residents no longer reside within California." [*Id*., ¶ 14.]

### 3. Most Of Plaintiff's Case Authorities Regarding Evidence Of CAFA Exceptions Precede, And Are Inconsistent With, *Mondragon*

On pages 7 and 8 of his brief, Plaintiff cites six cases in which district courts within the Ninth Circuit remanded cases to state court pursuant to CAFA exceptions. Five of those cases precede *Mondragon*. This Court should disregard those cases, because they do not reflect current Ninth Circuit law. None of the five cases discussed any actual evidence regarding the citizenships of putative class members. In each one, the court based remand on broad, "how the world works" reasoning very similar to the reasoning that the *Mondragon* court subsequently disapproved. *See Romo v. Panda Rest. Grp., Inc.*, No. CV 12-996, 2012 U.S. Dist. LEXIS 128689, *9-10 (C.D. Cal. Sep. 7, 2012) (remanding case based on statistical evidence and what court expressly characterized as "common sense judgments as to the citizenship of purported class members"); *Quesada v. Herb Thyme Farms, Inc.*, No. CV 11-16, 2011 U.S. Dist. LEXIS 37697, *9-10 (C.D. Cal. Mar. 28, 2011) (finding, squarely contrary to *Mondragon*, that more than two-thirds of class members were California citizens merely because the class was defined as persons who had made purchases in California); *Rotenberg v. Brain Research Labs LLC*, No. C-09-2914, 2009 U.S. Dist. LEXIS 91335, *6-9 (N.D. Cal. Sep. 15, 2009) (discussing California "purchasers," "residents," and "citizens" as synonymous in a manner clearly rejected by *Mondragon*).

Two of the cases cited by Plaintiff are pre-*Mondragon* decisions of this Court. In *Rodriguez v. Instagram, LLC*, No. C 12-6482, 2013 U.S. Dist. LEXIS 98627 (N.D. Cal. July 12, 2013), this Court held that no discovery or proof regarding citizenship was necessary at all in a consumer class action on behalf of a class of California

19

residents. *Id.* at *6-8. Similarly, in *Haynes v. EMC Mortg. Corp.*, No. C 10-372, 2010 U.S. Dist. LEXIS 46436 (N.D. Cal. Apr. 12, 2010), this Court found that two-thirds of class members were California citizens, solely because the class was defined as consisting of California residential real estate owners. *Id.* at *4, 7-9. *Rodriguez* and *Haynes* were consistent with the (unsettled) law of this circuit when they were decided, but they are not consistent with *Mondragon*. *Mondragon* holds that although it is permissible for district courts to draw inferences from evidence, there must first *be* some evidence. Now that *Mondragon* is the law of this circuit, courts may not draw inferences directly from class definitions, which is what this Court did in *Rodriguez* and *Haynes* and what Plaintiff is asking this Court to do here.

*Mondragon* significantly clarified the law of this circuit with respect to the evidentiary showing that a plaintiff or other party must make in order to support a CAFA exception claim. This Court should not follow earlier cases (including its own) that are inconsistent with *Mondragon's* holding.

### 4. Plaintiff's Lone Authority That Postdates Mondragon Fails To Discuss Or Apply That Controlling Authority

In his CAFA exception argument, Plaintiff does cite one case that was decided after *Mondragon*. That case is *Cortez v. McClatchy Newspapers, Inc.*, No. 2:15-cv-1891, 2016 U.S. Dist. LEXIS 74315 (E.D. Cal. June 6, 2016). *Cortez* is inconsistent with *Mondragon*, and to that extent was wrongly decided. It appears to have been decided without consideration of *Mondragon*, which is not cited in the opinion's discussion of the CAFA exception issue. In fact, the *Cortez* opinion discusses a Seventh Circuit opinion that the Ninth Circuit discussed and found persuasive in *Mondragon*. *See Cortez*, 2016 U.S. Dist. LEXIS 74315, *20-21 (discussing *In re Sprint Nextel Corp.*, 593 F.3d 669, 671-74 (7th Cir. 2010)). The opinion notes the Seventh Circuit's rejection in that case of "guesswork" in the resolution of CAFA-related citizenship issues. *Id.* at 21. But then, incredibly, two and a half years after the Ninth Circuit had decided *Mondragon*, expressly agreeing with the Seventh Circuit

that "guesswork" should not be permitted, the *Cortez* court went on to write: "Defendant does not cite a Ninth Circuit case making the same holding." *Id.*

That statement, amazing as it is, appears to be correct. The *Cortez* court was not well served by counsel; none of the parties' briefs in connection with the *Cortez* motion to remand cite *Mondragon*. But this Court should not follow an opinion that was so clearly decided without consideration of key, controlling Ninth Circuit authority. It should instead do what the *Cortez* court did not get a chance to do: apply the reasoning of *Mondragon* to the facts of this case.

**5.    Other Cases Decided After Mondragon, Which Actually Cite And Apply It, Better Illustrate What Ninth Circuit Law Now Requires**

Other cases decided after *Mondragon* provide far better examples of what Ninth Circuit law now requires. For example, *Serrano v. Bay Bread LLC*, No. 14-cv-1087, 2014 U.S. Dist. LEXIS 127939 (N.D. Cal. Sep. 14, 2014), was a wage and hour class action involving a putative class of California employees. The district court denied the plaintiffs' first motion for remand, which was predicated on CAFA's local controversy exception, on the ground that the plaintiffs had not put forward sufficient evidence that two-thirds of the putative class were California citizens. *Id.* at *2. When they filed a renewed motion, the plaintiffs came forward with evidence of all class members' last known mailing addresses, over 99 percent of which were California addresses. *Id.* at *10. Based on this evidence regarding the actual putative class members, the court decided it was reasonable to infer that over two-thirds of them had been citizens of California when the case was removed. *Id.* at *10-11. Similarly, *Vitale v. D.R. Horton, Inc.*, CV No. 15-312, 2016 U.S. Dist. LEXIS 105151 (D. Haw. Aug. 9, 2016) was a construction defect class action involving a putative class of Hawai'i home buyers. When the district court ordered briefing on the subject of CAFA jurisdiction, the plaintiffs came forward with evidence that the mailing addresses on record for property tax purposes in connection with 2,972 of the 3,300

DOLL AMIR & ELEY LLP

properties at issue were Hawai'i addresses. *Id.* at *9-10. Based on this evidence regarding the actual putative class members, the court concluded: "This is not a case in which no evidence has been presented, and the Court is limited to 'guesswork' regarding whether the pertinent citizenship thresholds have been met. *Id.* at 12 (citing *Mondragon*, 736 F.3d at 884). Although property tax mailing addresses are not conclusive evidence of citizenship, the court inferred from the specific evidence that more than two-thirds of the putative class members were Hawai'i citizens. *Id.* at *13.

This case is not like *Serrano* or *Vitale*. Plaintiff has come forward with no evidence at all regarding the actual people who are members of the putative class. As such, there is no evidentiary basis for a conclusion that two-thirds of them were California citizens when this case became removable. On this record, such a conclusion would represent the sort of "guesswork" that *Mondragon* prohibits.

### G. Plaintiff Should Not Be Allowed To Amend His Complaint For The Purpose Of Defeating Federal Jurisdiction

Toward the end of his CAFA exception argument, Plaintiff argues that he should be permitted to amend his complaint to "clarify" that the putative class is limited to California citizens. Plaintiff cites *Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1117 (9th Cir. 2015) in support of this argument. [Motion at 9:1-11.] The Ninth Circuit has in fact more recently specified that *Benko* is not authority for an amendment of this nature. A plaintiff may not amend a complaint after removal so as to limit the class definition to California citizens and defeat CAFA jurisdiction. *Broadway Grill*, 856 F.3d at 1276-79 (discussing and limiting *Benko*); see also *Doyle v. OneWest Bank*, 764 F.3d 1097, 1098 (9th Cir. 2014) (vacating CAFA remand order based on class definition in amended complaint filed after removal; only relevant class definition was the one in complaint operative when case became removable); *Richards v. Now, LLC*, No. 2:18-cv-10152, 2019 U.S. Dist. LEXIS 77979, *5-11 (C.D. Cal. May 8, 2019) (discussing *Broadway Grill* and listing cases in which courts

22

DOLL AMIR & ELEY LLP

1  applying *Broadway Grill* have refused amendments "clarifying" that class members

2  were citizens of California rather than residents).

3      **H.**    <u>**HP Does Not Object To Appropriate Jurisdictional Discovery**</u>

4      The Ninth Circuit has repeatedly affirmed the appropriateness of jurisdictional

5  discovery, where district courts deem it necessary in order to resolve removal

6  jurisdiction issues. *See King*, 903 F.3d at 880-81; *Mondragon*, 736 F.3d at 885.

7  Indeed, it is generally inappropriate to determine that jurisdiction is lacking under

8  circumstances in which "[f]urther discovery . . . might well demonstrate facts

9  sufficient to constitute a basis for jurisdiction[.]" *Harris Rutsky & Co. Ins. Servs., Inc.*

10  *v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003).

11      If this Court denies Plaintiff's motion, as it should, the parties will be free to

12  conduct discovery on all issues. HP understands that such discovery may include

13  jurisdictional issues. *See Tuttle v. Sky Bell Asset Mgmt. LLC*, No. C 10-3588, 2011

14  U.S. Dist. LEXIS 7466, *13 (N.D. Cal. Jan. 21, 2011).]

15      **I.**    <u>**There Is No Basis To Award Costs And Fees**</u>

16      Plaintiff attempts to argue that the removal statute "requires" a removing party

17  to pay costs, including attorneys' fees, in all instances of improper or unnecessary

18  removal. (Motion at 12:9-19.) This is incorrect. "[W]hether a removal is improper is

19  not dispositive in determining whether fees should be awarded under 28 U.S.C. §

20  1447(c)." *Gardner v. UICI*, 508 F.3d 559, 562 (9th Cir. 2007). "Absent unusual

21  circumstances, courts may award attorney's fees under § 1447(c) only where the

22  removing party lacked an objectively reasonable basis for seeking removal.

23  Conversely, when an objectively reasonable basis exists, fees should be denied."

24  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "Removal is not

25  objectively unreasonable solely because the removing party's arguments lack merit . .

26  . ." *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008). Instead,

27  removal is objectively unreasonable only where relevant case law clearly forecloses

28

the defendant's basis of removal. *Id.* at 1066 (citing *Lott v. Pfizer, Inc.*, 492 F.3d 789, 793 (7th Cir. 2007)).

This Court should deny Plaintiff's motion for remand. But even if the Court grants the motion, it should conclude that the arguments set forth in this memorandum are objectively reasonable. The elements of CAFA removal are clearly met, and Plaintiff failed to produce in advance of filing the motion to remand evidence sufficient to meet his burden of demonstrating that a statutory exception applies. *See Van Fleet v. Trion Worlds, Inc.*, No. C 15-4721, 2016 U.S. Dist. LEXIS 3794, *16 (N.D. Cal. Jan. 12, 2016) (denying fees where CAFA elements were met and where defendant's other legal arguments were reasonable, albeit incorrect); *Hoy v. Clinnin*, No. 17-cv-788, 2017 U.S. Dist. LEXIS 96872, *9 (S.D. Cal. June 22, 2017) ("Though the Court ultimately holds that the local controversy exception applies to this case, its application is not so obvious so as to render the grounds for removal unreasonable").

## IV.  CONCLUSION

For the foregoing reasons, HP respectfully requests that this Court deny Plaintiff's motion to remand.

DATED:  May 22, 2019                    DOLL AMIR & ELEY LLP


By: _/s/ Hunter R. Eley_____
     GREGORY L. DOLL
     HUNTER R. ELEY
     CONNIE Y. TCHENG
     LLOYD VU
Attorneys for Defendant,
HP INC.